FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

25 FEB -5 AM11: 33

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____
                          (To be supplied by the court)

Elizabeth AlexaRRa MAY _____, Plaintiff

QuaRteRRa multifamily LLC
v. BTC IV DenveR GateWay II, LLC
LennaR CoRPoRatioh
_____,

DHIC GateWay LLC
D. R. HoRtoh Realty LLC
DRHR PRoPeRty Managemeht ihc

Tschetter SulzeR nuccio P. C.
_____, Defendant(s).

_____

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names of the defendants listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

**Jury Trial requested:**
**(please check one)**
___ Yes ___ No

---

# COMPLAINT

---

## NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

**A.    PLAINTIFF INFORMATION**

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Elizabeth Alexarrra MAy, 18591 E 61stave,
(Name and complete mailing address)

APT 442, Denver, Co, 80249 7206121574
(Telephone number and e-mail address)    999Raimova@gmail.com

**B.    DEFENDANT(S) INFORMATION**

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

5500 waterford district Drive, Miami, Florida, 33126

Defendant 1: Quarterra Multifamily Communities LLC
(Name and complete mailing address)    7700 E ArapahoeRd, #220

Registered agent: CT corporation System: Centennial, CO, 80112
(Telephone number and e-mail address if known)

Defendant 2: Tschetter Sulzer muccio, P.C.
(Name and complete mailing address)

3600 S Yosemite St, #828, Denver, co, 80237
(Telephone number and e-mail address if known)

5505 waterford District Drive, Miami, Florida, 33126

Defendant 3: BTC IV Denver Gateway II, LLC
(Name and complete mailing address)    155 E Broadwalk
#490, Fort Colins

Registered agent: Corporate Creations Network Inc: Colorado, 80525
(Telephone number and e-mail address if known)

Defendant 4: Lennar Multifamily Communities LLC    com
(Name and complete mailing address)    email: Stuart.miller@lennar

P.o. Box 115009, Carrollton, TX, 75011
(Telephone number and e-mail address if known)

Registered agent: CT corpo
Ration System, 7700 E Arapah
#220 Centennial, co, 80112
Defendant5: D.R.Horton Realty LLC
Defendant6: DRHR Property management Inc
Defendant7: DHIC Gateway LLC
Address: 1341 Horton Cir. Arlington, Texas 76011

Registered agent: CT Corporation System
7700 E Arapahoe Rd, #200, Centennial, Co, 80112

**C.    JURISDICTION**

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

✓    Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

List the specific federal statute, treaty, and/or provision(s) of the United States Constitution that are at issue in this case.

Racketeer Influenced and Corrupt Organizations Act (RICO), Americans with Disabilities Act (ADA) Fair Housing Act, Civil Rights Violations, FRAUD upon the Government Agencies.

___    Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

Plaintiff is a citizen of the State of ___Colorado___.

If Defendant 1 is an individual, Defendant 1 is a citizen of _____.

If Defendant 1 is a corporation,

Defendant 1 is incorporated under the laws of _____ (name of state or foreign nation).

Defendant 1 has its principal place of business in _____ (name of state or foreign nation).

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: Defendants Fraudulent Dual lease Practices

Supporting facts: Two versions of lease agreements

lease 1 for tenants
Lease 2 for Government and Regulaters.

Claim Two: Fraudulent Non-Renewal Notice and coercive eviction.
By Tschetter Suizer, Ordered by their clients.

Claim three: Fraudulent Settlement Agreements and illegal Non-Disparagement Clauses

Claim Four: Systematic Coercion, Retaliation And Intimidation by defendants

Elizabeth Aletarrra May

4

02. 05. 2025

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

Plaintiff:

Elizabeth Alexarrra May

Defendants:
- Tschetter Sulzer Muccio P.C.
- Quarterra Multifamily Communities, LLC
  BTC IV Denver Gateway II, LLC
- Lennar Corporation
- D.R. Horton Realty
- DHIC Gateway LLC
- DRHR Property Management Inc.

## INTRODUCTION

Plaintiff Elizabeth Alexarrra May brings this action against Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. §§ 1961–1968), fraudulent misrepresentation, housing fraud, retaliation, obstruction of justice, and violations of federal civil rights laws.

Plaintiff seeks actual, compensatory, and punitive damages, as well as injunctive relief to prevent further misconduct. Defendants engaged in a deliberate, systemic fraudulent scheme that deprived Plaintiff of her home, exploited her vulnerability, and misled government agencies.

## JURISDICTION & VENUE

(Federal laws and proper venue in Colorado District Court.)

## FACTUAL BACKGROUND

1. Dual Lease Fraud (Quarterra multifamily llc, BTC IV Denver Gateway II, LLC & Tschetter Sulzer Muccio P.C.)
- Quarterra, BTC IV Denver Gateway II, LLC and Lennar engaged in an intentional fraud scheme by creating two separate lease versions for the same rental unit:
- Lease 1 (Higher Rent, Stricter Terms, Enforced Against Plaintiff).
- Lease 2 (Lower Rent, Softer Terms, Fraudulently Submitted to Regulators).
- Purpose of the Fraud: To mislead regulators, suppress tenant complaints, and defraud tax authorities (IRS).
- Tschetter Sulzer Muccio P.C. knowingly assisted in this fraud by submitting Lease 2 to the

Colorado Civil Rights Division (CCRD) while enforcing Lease 1 against Plaintiff.

2. Fraudulent Non-Renewal Notice & Coercive Eviction (Quarterra & Tschetter Sulzer Muccio P.C.)
- In retaliation for Plaintiff submitting a complaint to CCRD, Quarterra issued a fraudulent, retaliatory non-renewal notice that did not comply with the required 90-day notice period.
- Plaintiff was forced to vacate the premises under illegal conditions, unaware of her 90-day right.
-

Quarterra knowingly bypassed mandatory eviction mediation, violating ADA and Fair Housing Act regulations.

Under federal and state housing laws, eviction mediation serves as a critical safeguard for tenants, particularly those with disabilities, to ensure fair treatment, prevent discriminatory evictions, and provide reasonable accommodations before any eviction proceedings advance. The Fair Housing Act (FHA) (42 U.S.C. § 3604) and Americans with Disabilities Act (ADA) (42 U.S.C. § 12132) mandate that landlords engage in an interactive process to explore reasonable accommodations before proceeding with actions that could result in displacement.

Why Mandatory Eviction Mediation Was Necessary:
1. Required Under Housing Protections:
- Mediation is designed to prevent wrongful evictions and allow disputes to be resolved without forcing disabled tenants into costly and disruptive legal battles.
- Many jurisdictions require mediation before a formal eviction can proceed, ensuring landlords do not ignore disability-related accommodation requests or retaliate against tenants.
2. Quarterra Knew of Plaintiff's Disability:
- Plaintiff made repeated reasonable accommodation requests due to severe respiratory disabilities.
- Quarterra was legally obligated to engage in a meaningful dialogue before proceeding with eviction-related actions.
- Their decision to bypass mediation entirely demonstrates deliberate disregard for their legal duty to accommodate and engage in the interactive process required under the FHA and ADA.
3. Retaliatory & Discriminatory Intent:
- Quarterra's failure to participate in mediation directly correlates with their ongoing discriminatory actions and retaliation against the Plaintiff for asserting their legal rights.
- Instead of addressing the Plaintiff's health-related housing concerns through mediation, Quarterra escalated eviction proceedings, knowing the harmful impact it would have on a disabled tenant.

Plaintiff's Lack of Awareness of Rights at the Time & Ongoing Civil Rights Division Investigation:

At the time, Plaintiff was unaware of their legal rights, including the right to a 90-day accommodation

period and the right to mediation before eviction-related actions could be taken. Quarterra took advantage of this lack of knowledge to fraudulently issue a non-renewal notice, depriving Plaintiff of the opportunity to challenge their actions. Currently, the Colorado Civil Rights Division has opened an investigation into Quarterra's fraudulent non-renewal notice, recognizing its violations of state and federal housing laws.

Violations Committed by Quarterra:
- Violation of the Fair Housing Act (42 U.S.C. § 3604(f)(3)):
- Requires housing providers to provide reasonable accommodations to disabled tenants.
- Quarterra's refusal to engage in mediation shows a failure to accommodate and an intent to force eviction without proper due process.
- Violation of the Americans with Disabilities Act (42 U.S.C. § 12132):
- Prohibits discrimination in housing and public accommodations.
- By skipping mediation, Quarterra denied Plaintiff the opportunity to negotiate alternative solutions that would have prevented further harm.

Conclusion:

Quarterra's decision to bypass mandatory eviction mediation was not only a procedural violation but a deliberate act of discrimination and retaliation against a disabled tenant. Their actions denied Plaintiff the right to reasonable accommodations, due process, and the opportunity to resolve disputes before facing eviction-related threats. Given that the Colorado Civil Rights Division is now investigating Quarterra's fraudulent non-renewal notice, it further underscores the severity of these violations. The court should recognize this failure as a direct violation of ADA and FHA protections and hold Quarterra accountable for its unlawful eviction practices.

3. Fraudulent Settlement Agreement & Non-Disparagement Clause (D.R. Horton, DHIC, DRHR Property Management Inc.)
- On November 11, 2024, D.R. Horton, DHIC, and DRHR Property Management Inc. offered a fraudulent settlement agreement, stating that Plaintiff must vacate by the end of November 2024—less than 20 days to move out, despite having an active lease.
- The settlement contained an illegal $5,000 non-disparagement clause stating that Plaintiff could not report D.R. Horton to regulatory agencies (HUD, CCRD, DOJ, or IRS).
- This clause directly violates public policy because:
- It obstructs justice and suppresses regulatory complaints.
- It is coercive retaliation against a disabled tenant receiving SSI—D.R. Horton knew Plaintiff could never afford the $5,000 per violation, proving the clause was designed purely as an intimidation tactic.
- HUD, DOJ, and federal courts have consistently ruled that such clauses are void and unenforceable in housing discrimination and civil rights cases.

In addition, D.R. Horton, DHIC, and DRHR's False Blame on Denver Water: A Pattern of Systematic

Public Deception

Defendants D.R. Horton, DHIC, and DRHR deliberately misled not only Plaintiff but all residents by falsely blaming Denver Water, a government agency, for the water shutdown in their building. This deceptive act was not an isolated miscommunication—it was a mass-distributed false statement issued in two separate emails by two different representatives at different times, proving that this was a deliberate, coordinated attempt to deflect blame from their own regulatory violations.

1. False Statements Broadcasted to All Residents

Two Separate Emails Sent at Different Times:
Defendants issued two separate notices to all residents falsely attributing the water shutdown to Denver Water.
Contradictory and Inconsistent Justifications:
Each notice contained conflicting explanations, further proving that Defendants were not simply misinformed but were actively engaging in a deliberate cover-up.
The Truth: Defendants Were Solely Responsible for the Water Shutdown:
An investigation revealed that the shutdown was caused by Defendants' own failure to comply with critical water system regulations, not by any action taken by Denver Water.

2. The Serious Consequences of This Deception

By spreading false information to an entire community and falsely implicating a government agency, Defendants engaged in deliberate public deception with serious consequences:
Erosion of Public Trust in Government Services:
Residents, believing Defendants' statements to be true, may wrongly distrust Denver Water, assuming that the agency was responsible for negligence when, in fact, the issue was caused by Defendants' own regulatory failures.
Systematic Pattern of Misleading the Public:
This incident is not an isolated mistake but part of a larger pattern of Defendants engaging in deceptive practices to avoid accountability and mislead tenants.
Tenant Confusion and Lack of Proper Recourse:
By blaming a government agency, Defendants prevented tenants from understanding the true cause of the issue and taking the appropriate actions to demand accountability.

3. Why This Matters in a Broader Context

Defendants' actions prove that they are willing to deliberately mislead the public on a large scale to cover up their own failures. This should raise serious concerns about:
Their reliability as housing providers.
Their willingness to fabricate information whenever convenient.
The broader risks posed to residents, regulators, and government agencies when corporate landlords

manipulate facts to evade accountability.

## 4. Systematic Issue

This was not an accident or a clerical error—it was a deliberate and coordinated misrepresentation made twice, at two different times, by two different representatives, to an entire residential community. The Court should recognize this as further evidence of Defendants' systematic pattern of deception and public misinformation and consider appropriate judicial intervention to prevent further harm.

## LEGAL CLAIMS

## Claim 1:

## Defendants' Fraudulent Submission to Colorado Civil Rights Division (CCRD): Concealing the True Lease to Evade Accountability and Defraud Regulators

As part of their systematic fraud scheme, Quarterra, Lennar, and Tschetter Sulzer Muccio P.C. deliberately manipulated lease agreements and submitted false documentation to the Colorado Civil Rights Division (CCRD) in an effort to mislead a government agency, obstruct justice, and defraud tax authorities.

1.  Secret Submission of Fraudulent Lease to Government Regulators
   - When Plaintiff filed a formal housing discrimination complaint against Defendants, the CCRD requested lease documentation to evaluate the case.
   - Instead of submitting Lease 1 (the actual lease presented to and enforced against Plaintiff), Defendants concealed it and instead submitted Lease 2, a fraudulent version of the lease with more favorable terms that did not reflect the actual agreement.
   - Plaintiff was never given Lease 2, nor was she aware that it even existed until much later, when it was uncovered through records obtained from CCRD.
   - Defendants never disclosed the existence of Lease 2 to Plaintiff before or during her tenancy.
2.  Intentional Misrepresentation to Show False Compliance
   - By secretly submitting Lease 2 to government regulators, Defendants sought to falsely demonstrate compliance with housing laws, conceal evidence of discriminatory terms, and mislead state officials into believing Plaintiff was given a fair and lawful lease.
   - Lease 2 contained softer terms, omitted key financial penalties, and falsely lowered the rent amount.
   - This fraudulent submission made it appear as though Plaintiff had not been subjected to excessive rent charges, harsher lease terms, or additional hidden fees.
   - The intentional concealment of Lease 1 was a deliberate obstruction tactic to avoid liability and prevent CCRD from discovering the true predatory nature of the lease.
3.  Direct Evidence of Tax Fraud & Financial Misrepresentation
   - The differences between Lease 1 and Lease 2 expose a clear financial fraud designed to

evade taxes and falsify rental income.

- Lease 2 removed the $50 monthly utility fee that Plaintiff had been charged—which proves that Defendants sought to hide this additional rental income from tax authorities.

- Lease 2 also reflected a lower monthly rent amount than Plaintiff was actually charged, which directly suggests Defendants fraudulently underreported their rental income to the IRS.

- Falsifying rental income through dual leases constitutes tax fraud under 26 U.S.C. § 7206 and is a predicate act under RICO (18 U.S.C. § 1961-1968).

4.    Fraud Upon a Government Agency & Obstruction of Justice

- Knowingly submitting a falsified lease agreement to a government agency constitutes fraud upon that agency and an obstruction of justice.

- This submission not only misled CCRD but also deprived Plaintiff of a fair investigation, as the agency based its findings on fraudulent evidence submitted by Defendants.

- By misrepresenting material facts to CCRD, Defendants engaged in an intentional deception that violated both housing regulations and federal fraud statutes.

Why This is a National-Level Problem

This fraudulent practice is not just an isolated instance affecting one tenant—it represents a broader scheme used by landlords and property management companies nationwide to suppress tenant complaints, evade taxes, and manipulate government investigations.

- Defendants exploited a government agency (CCRD) to cover up their own fraud, undermining the legitimacy of housing discrimination investigations.

- By misrepresenting lease terms to regulators and tenants, they engaged in a deceptive practice that financially harms tenants while defrauding the IRS.

- This case exposes a larger pattern of landlords fabricating fraudulent lease agreements to hide violations and gain an unfair legal advantage.

coordinated pattern of fraudulent conduct

- Mail Fraud (18 U.S.C. § 1341) -
Submitting fraudulent lease agreements via mail to agencies and courts.

- Wire Fraud (18 U.S.C. § 1343) - Electronically submitting falsified lease agreements to regulators and the IRS.

- Tax Fraud (26 U.S.C. § 7206) - Knowingly underreporting rental income through fraudulent lease agreements.

- Obstruction of Justice (18 U.S.C. §
1503, § 1512) - Providing false evidence in judicial proceedings and fair housing investigations.

- Fair Housing Act Violations (42 U.S.C. §

3604) - Misrepresenting lease terms to evade liability in housing discrimination cases.

Because this fraud involves coordinated acts affecting multiple agencies and tenants, it qualifies as a pattern of racketeering activity under RICO (18 U.S.C. §§ 1961-11 4 •

**Court Action Requested**

Given the severity of these fraudulent actions, Plaintiff respectfully requests that the Court:

1.     Recognize Defendants' submission of fraudulent Lease 2 to CCRD as a deliberate misrepresentation and obstruction of justice.
2.     Refer this matter to the appropriate state and federal agencies, including the IRS and HUD, for further investigation into Defendants' fraudulent tax and housing practices.
3.     Find that Defendants engaged in RICO predicate acts, tax fraud, and housing fraud through their use of dual lease agreements.
4.     Hold Defendants accountable for their efforts to conceal material evidence and deceive a government agency.

**Claim 2: Fraudulent Non-Renewal Notice & Coercive Eviction (Quarterra & Tschetter Sulzer Muccio P.C.)**

(Violations of the Fair Housing Act, ADA, Retaliation & Coercion Laws, and Civil Rights Violations under 42 U.S.C. § 1983)
•     Quarterra deliberately issued a non-renewal notice in violation of the required 90-day notice period and bypassed mandatory eviction mediation, violating the Fair Housing Act and ADA.
•     The non-renewal notice was issued immediately after Plaintiff filed a complaint with CCRD, proving clear retaliation.

**Claim 3: Fraudulent Settlement Agreement & Illegal Non-Disparagement Clause (D.R. Horton, DHIC, DRHR)**

(Violations of Public Policy, Fair Housing Retaliation Laws, and RICO Obstruction of Justice Laws)
•     D.R. Horton, DHIC, and DRHR Property Management engaged in coercive eviction by issuing a fraudulent settlement agreement requiring Plaintiff to vacate her home within 20 days while still under lease.
•     The $5,000 non-disparagement clause is unlawful, violating the Fair Housing Act, ADA, and public policy prohibiting retaliation and suppression of complaints.
•     This clause obstructed justice by attempting to prevent Plaintiff from filing regulatory complaints, which is a clear violation of 42 U.S.C. § 3617 (Fair Housing Act Retaliation) and 18 U.S.C. § 1512 (Obstruction of Justice).
•     Precedent Cases Demonstrate Non-Disparagement Clauses Are Void:
•     EEOC v. Astra USA, Inc., 94 F.3d 738 (1st Cir. 1996) → Courts struck down retaliation clauses

preventing civil rights complaints.
- HUD's Fair Housing Guidance → Non-disparagement clauses barring housing complaints are unenforceable as a matter of law.

Claim 4:
SYSTEMATIC COERCION, RETALIATION, AND INTIMIDATION BY DEFENDANTS

(Quarterra, btc gateway, Tschetter Sulzer Muccio P.C., D.R. Horton, DHIC, DRHR Property Management Inc.)

Plaintiff Elizabeth Alexarrra May asserts that Defendants engaged in a deliberate scheme of coercion, intimidation, and retaliation to suppress her legal rights under the Fair Housing Act (FHA) and Americans with Disabilities Act (ADA).

1. Intimidation: Placing Plaintiff in Constant Fear of Losing Her Home
- Quarterra and D.R. Horton, represented by Tschetter Sulzer Muccio P.C. (Cheddar Law Firm), engaged in coordinated tactics to intimidate Plaintiff into compliance.
- These tactics forced Plaintiff to live in constant fear of eviction, particularly as a disabled tenant with limited financial resources.
- Instead of engaging in a good-faith interactive process to address her accommodation requests, Defendants weaponized legal notices to create a hostile and coercive housing environment.

2. Coercion: False 10-Day Payment Demand Issued as Retaliation for Rejecting Fraudulent Settlement
- On October 20, 2024, Defendants offered Plaintiff an $8,000 fraudulent settlement agreement that contained an illegal non-disparagement clause.
- After Plaintiff rejected the settlement, Defendants immediately issued a false "10-day payment demand" on the same night, falsely framing it as a 10-day eviction notice.
- This notice was entirely baseless—Plaintiff was not in arrears and had no outstanding rent obligations.
- Only after Plaintiff escalated the issue to the Colorado Attorney General's Office did Defendants lift the notice, falsely claiming it was a mistake.
- The very fact that the notice was issued proves it was a deliberate act of coercion and retaliation, intended to intimidate Plaintiff into accepting the fraudulent settlement.

3. Systematic Discrimination: Tschetter Sulzer Muccio P.C. Uses the Same Tactics for Multiple Landlords
- Tschetter Sulzer Muccio P.C. ("Cheddar Law Firm") does not act as an impartial legal representative; rather, it operates as a tool for landlords to systematically deny all tenants' accommodation requests.
- Both Quarterra and D.R. Horton—two entirely separate landlords—used the exact same legal template drafted by Cheddar Law Firm to deny Plaintiff's accommodation requests.
- This "one-size-fits-all" template denial was sent to Plaintiff twice—once by Quarterra, and

once by D.R. Horton—both falsely claiming that providing accommodations would create a financial burden on the landlord.

•    This argument is blatantly false, as D.R. Horton had already offered Plaintiff $8,000 to move out—proving that financial burden was not an issue.

•    The fact that two different landlords used the exact same language, despite having entirely different financial situations, proves that Cheddar Law Firm has created a scheme designed to systemically deny all accommodation requests under false pretenses.


4. Legal Violations: Discriminatory Patterns & Failure to Engage in the Interactive Process


By issuing template-based, boilerplate denials of accommodations without engaging in an individualized review, Defendants violated federal civil rights laws, including but not limited to:

•    Fair Housing Act (42 U.S.C. § 3604(f)(3))

•    Requires landlords to provide reasonable accommodations for tenants with disabilities.

•    Defendants never engaged in the required "interactive process" to explore reasonable accommodations, violating FHA requirements.

•    Americans with Disabilities Act (ADA) (42 U.S.C. § 12132)

•    Prohibits discrimination against individuals with disabilities, including the refusal to provide reasonable accommodations.

•    Retaliation & Coercion (42 U.S.C. § 3617 - FHA & 42 U.S.C. § 12203 - ADA)

•    Illegal to coerce, intimidate, or retaliate against a person for asserting their rights.

•    Defendants' issuance of a false 10-day eviction notice immediately after Plaintiff rejected their fraudulent settlement proves intentional coercion and retaliation.

•    Colorado Anti-Discrimination Act (CADA) (C.R.S. § 24-34-502.2)

•    Prohibits landlords from using intimidation tactics to suppress tenant rights.

•    Defendants' repeated threats and intimidation tactics created a hostile and uninhabitable housing environment for Plaintiff.


Conclusion: This is a Systematic Fraudulent Scheme, Not an Isolated Incident

•    Cheddar Law Firm has created a legal framework designed to systematically deny tenants' accommodation requests under fraudulent "financial burden" claims.

•    This is not just about Plaintiff—Defendants' tactics pose a widespread risk to disabled tenants across multiple properties.

•    Defendants' coordinated scheme of coercion, intimidation, and retaliation must be recognized as a systemic violation of housing discrimination laws and addressed accordingly.


DEMAND FOR RELIEF


Plaintiff Seeks the Following Relief:


Actual, Compensatory, and Punitive Damages

Plaintiff seeks monetary relief for financial losses, retaliatory eviction tactics, housing fraud, and

emotional distress caused by Defendants' unlawful conduct. Given the deliberate nature of Defendants' actions, punitive damages are warranted to deter future misconduct and hold Defendants accountable.


Declaratory Judgment

Plaintiff requests a judicial declaration that:

- The fraudulent settlement agreement, which was coercively presented under duress, is void and unenforceable as a matter of law.
- The $5,000 non-disparagement clause violates public policy and is an unlawful attempt to obstruct justice by suppressing regulatory complaints.


Injunctive Relief – Prohibiting Defendants from Engaging in Systemic Housing Fraud

Plaintiff requests a permanent injunction barring Defendants from:

- Utilizing dual lease agreements to manipulate rental terms and mislead government agencies, tenants, and regulators.
- Engaging in deceptive eviction practices, including fraudulent non-renewal notices and coercive settlement agreements designed to force tenants out under unlawful conditions.
- Issuing retaliatory threats against tenants who assert their legal rights.
- Using boilerplate template-based denials of accommodation requests that disregard individual circumstances and violate the Fair Housing Act and ADA.


Referral to IRS for Tax and Financial Fraud Investigation

Defendants' use of dual lease agreements demonstrates an intentional effort to conceal rental income, evade tax liabilities, and manipulate financial records for regulatory compliance. Given the fraudulent misrepresentation of rental terms in official documents submitted to government agencies, Plaintiff requests the Court refer this matter to the IRS for a formal tax fraud investigation.


Referral to the Supreme Court for Attorney Misconduct & Fraud Upon the Court

Defendants' legal representatives, particularly Tschetter Sulzer Muccio P.C., engaged in fraudulent legal practices, including:

- Knowingly submitting falsified lease agreements to the Colorado Civil Rights Division to mislead regulatory agencies and obstruct Plaintiff's fair housing complaint.
- Committing fraud upon the court by submitting altered case information, misleading procedural filings, and deliberately engaging in improper litigation tactics to exploit Plaintiff's pro se status.
- Allowing Christopher Cunningham to unlawfully serve as both a key witness and defense attorney, violating legal and ethical standards.


Plaintiff requests the Court refer this matter to the Colorado Supreme Court's Office of Attorney Regulation Counsel (OARC) for an ethics investigation into attorney misconduct, fraudulent misrepresentation, and obstruction of justice.


Judicial Oversight & Monitoring of Defendants' Compliance

Given the systemic nature of Defendants' fraudulent activities, Plaintiff requests ongoing judicial oversight and court-appointed monitoring to ensure Defendants do not continue deceptive leasing and eviction practices in the future.

Referral to HUD for Investigation into Systemic ADA & FHA Violations

Referral to the U.S. Department of Housing and Urban Development (HUD) for Systemic ADA & FHA Violations

Defendants have engaged in a systematic practice of denying accommodation requests using a single template-based denial letter, falsely citing financial burden without conducting the required individualized assessment under the Americans with Disabilities Act (ADA) (42 U.S.C. § 12101 et seq.) and the Fair Housing Act (FHA) (42 U.S.C. § 3601 et seq.).

- Plaintiff was denied a reasonable accommodation under the exact same template-based language used in other cases, indicating a pattern of blanket denials rather than an individualized review, which is a violation of HUD's Reasonable Accommodation Guidelines.
- The same law firm (Tschetter Sulzer Muccio P.C.) facilitated identical denials for multiple landlords (Quarterra and D.R. Horton), proving a coordinated scheme to obstruct tenants' rights rather than conduct legitimate case-by-case reviews.
- Plaintiff requests the Court refer this matter to HUD's Office of Fair Housing and Equal Opportunity (FHEO) for an investigation into Defendants' widespread and systemic violations of fair housing laws.

Punitive Damages – Necessary to Deter Future Misconduct and Protect Public Interest

Plaintiff seeks punitive damages against Defendants to hold them accountable for their deliberate, systemic fraud and blatant violations of federal law, including the Americans with Disabilities Act (ADA), Fair Housing Act (FHA), and RICO statutes. The purpose of punitive damages is not only to compensate the Plaintiff but to serve a public deterrent, ensuring that Defendants do not continue their unlawful conduct against other vulnerable tenants and government agencies.

1. Preventing Defendants from Continuing Their Fraudulent Business Model

- Defendants knowingly and intentionally engaged in misconduct, including dual lease fraud, falsified settlement agreements, retaliatory eviction tactics, and systemic denial of disability accommodations.
- These are not isolated incidents but part of a structured, deliberate scheme that targets tenants, deceives regulators, and undermines public trust in fair housing laws.
- If punitive damages are not imposed, Defendants will continue their fraudulent, retaliatory, and discriminatory practices, harming other tenants, regulators, and public institutions.

2. Preventing Future Violations of ADA & FHA – Ensuring Disabled Tenants Are Not Targeted Again

- Defendants' systematic use of template-based accommodation denials violates the Fair Housing Act (42 U.S.C. § 3604) and the Americans with Disabilities Act (42 U.S.C. § 12132).

- Instead of conducting individualized assessments as required by law, Defendants issued one-size-fits-all rejections under the pretext of financial burden, denying disabled tenants the legal protections they are entitled to.
- Punitive damages are necessary to send a clear message that disability-based housing discrimination will not be tolerated, preventing Defendants from denying future tenants their ADA and FHA rights.

3. Preventing Defendants from Defrauding Government Agencies (HUD, IRS, CCRD, DOJ)
- Defendants deceived the Colorado Civil Rights Division (CCRD) and HUD by submitting fraudulent lease documents, omitting material information, and presenting false compliance to evade liability.
- The submission of a lower-rent, falsified lease (Lease 2) to regulators, while enforcing a stricter, higher-rent lease (Lease 1) against Plaintiff, constitutes IRS fraud and intentional misrepresentation to government bodies.
- If the Court does not impose punitive damages, Defendants will continue to manipulate legal and regulatory systems, eroding the integrity of government enforcement and causing systemic harm to other tenants and agencies nationwide.

4. Public Interest – Holding Defendants Accountable for Racketeering & Obstruction of Justice
- Defendants' pattern of misconduct mirrors organized racketeering activity, as they have used fraudulent legal tactics, intimidation, and coercion to silence tenants and suppress legal challenges.
- Their attempt to insert illegal non-disparagement clauses in settlement agreements shows a deliberate effort to obstruct justice and suppress legitimate complaints to regulators.
- Punitive damages are essential to ensure that Defendants do not use their wealth, legal teams, and fraudulent business practices to continue violating laws with impunity.

I respectfully ask this Honourable Court to Impose Punitive Damages to Prevent Further Harm

Given the severity and scope of Defendants' misconduct, punitive damages must be awarded to:
Deter future misconduct and prevent Defendants from continuing fraudulent, retaliatory, and discriminatory practices.
Hold Defendants accountable for housing discrimination, government fraud, and obstruction of justice.
Protect tenants, government agencies, and the public from continued deception and illegal business practices.
Send a clear message that disability discrimination, housing fraud, and retaliatory eviction will not be tolerated.

This case is not just about the Plaintiff, but about stopping a larger fraudulent scheme that has already harmed multiple tenants and deceived government agencies. The Court has an opportunity to set a strong precedent by imposing punitive damages that will force Defendants to change their unlawful business model and comply with fair housing and disability laws.

REQUEST FOR INJUNCTIVE RELIEF

Plaintiff respectfully requests that this Court issue a permanent injunction prohibiting Defendants from engaging in fraudulent, retaliatory, and unlawful housing practices, which have caused severe harm to Plaintiff and continue to threaten tenants nationwide.

## I. Necessity of Injunctive Relief to Prevent Future Violations

The pattern of misconduct displayed by Defendants is systemic, deliberate, and ongoing. This is not an isolated incident but a coordinated scheme designed to defraud tenants, mislead government agencies, and obstruct justice. Without an injunction, Defendants will continue these practices unchecked, harming other tenants and undermining the integrity of housing laws.

## II. Specific Prohibitions Sought by the Court

Plaintiff seeks an injunction barring Defendants—including Quarterra Multifamily, BTC IV Denver Gateway II, LLC, Lennar, Tschetter Sulzer Muccio P.C., D.R. Horton Realty, DHIC Gateway LLC, and DRHR Property Management Inc.—from engaging in the following fraudulent and unlawful practices:

1. Dual Lease Fraud & Deceptive Leasing Practices
   - Defendants must be permanently prohibited from creating, enforcing, or submitting multiple versions of a lease agreement for the same rental unit with different financial terms, conditions, or clauses.
   - Defendants must disclose all executed lease agreements in full to tenants and regulators, preventing submission of fraudulent lease versions to suppress complaints or deceive regulatory agencies.
2. Fraudulent & Retaliatory Non-Renewal Notices
   - Defendants must be barred from issuing non-renewal notices that violate tenants' statutory rights, particularly in cases where the tenant has requested reasonable accommodations under the ADA or FHA.
   - Any non-renewal notice must include a sworn affidavit confirming compliance with all federal and state laws to prevent fraudulent evictions.
3. Suppression of Tenant Complaints & Obstruction of Justice
   - Defendants must be prohibited from including non-disparagement clauses, retaliation clauses, or any agreement that seeks to prevent tenants from filing complaints with government agencies (HUD, CCRD, DOJ, IRS, etc.).
   - Defendants must affirmatively notify tenants of their rights to report housing violations without fear of retaliation or financial penalties.
4. ADA & FHA Accommodation Violations
   - Defendants must be barred from using template-based form denials for accommodation requests.
   - Defendants must be required to conduct an individualized review of all accommodation

requests and maintain records proving compliance with the interactive process required under ADA (42 U.S.C. § 12132) and FHA (42 U.S.C. § 3604).

    5.    Fraudulent Misrepresentations to Government Agencies (IRS, HUD, CCRD, Denver Water, etc.)

- Defendants must immediately cease and be permanently barred from submitting fraudulent documents to regulatory agencies, including false lease agreements, altered financial statements, or misleading explanations to government officials.
- Defendants must provide full transparency in regulatory filings and submit certified sworn statements verifying the accuracy of any documents submitted to government agencies.

## III. Court-Ordered Referrals to Federal & State Agencies

Given the severity of Defendants' misconduct, Plaintiff requests that the Court refer this matter for further investigation and enforcement action by appropriate federal and state agencies, including:

Internal Revenue Service (IRS) – To investigate potential tax fraud and improper financial reporting associated with the dual lease scheme and manipulation of rent amounts.

U.S. Department of Justice (DOJ) – Civil Rights Division – To investigate systemic housing fraud, Fair Housing Act violations, and ADA non-compliance for pattern-based discrimination against tenants.

Colorado Supreme Court / Attorney Discipline Board – To initiate disciplinary proceedings against Tschetter Sulzer Muccio P.C. and its attorneys for fraud upon the court, conflict of interest, and procedural misconduct in knowingly misleading the judiciary.

U.S. Department of Housing & Urban Development (HUD) – To issue enforcement actions against Defendants for repeated violations of federal housing regulations and retaliation against tenants who file complaints.

Colorado Civil Rights Division (CCRD) – To coordinate further investigation of Quarterra and D.R. Horton regarding the denial of accommodations, coercive eviction tactics, and fraudulent regulatory submissions.

## IV. Legal Basis for Injunctive Relief

Federal law allows for injunctive relief where a Defendant's conduct is ongoing, will cause irreparable harm, and is contrary to public interest. Plaintiff meets all required legal criteria:

Likelihood of Future Harm – Defendants' repeated history of misconduct demonstrates a high probability that they will continue violating housing laws unless restrained.
No Adequate Legal Remedy – Monetary damages alone will not prevent future tenants from falling victim to fraudulent lease agreements, coercive non-renewal notices, or ADA violations.

Strong Public Interest – Housing fraud, ADA violations, and obstruction of justice harm not just Plaintiff but all tenants, regulatory agencies, and the integrity of housing protections nationwide.

CONCLUSION

For the reasons stated above, Plaintiff urgently requests that this Court grant permanent injunctive relief to prevent Defendants from continuing their fraudulent leasing practices, ADA violations, and systemic obstruction of tenant rights. Additionally, Plaintiff requests court-ordered referrals to the IRS, DOJ, HUD, and Colorado Supreme Court for further enforcement action against Defendants' unlawful conduct.

FEDERAL JURISDICTION & VENUE

Plaintiff respectfully asserts that this Honorable Court has subject matter jurisdiction over this action pursuant to federal law, as the claims involve substantial federal questions and arise under statutes that grant exclusive jurisdiction to federal courts.

I. This Court Has Federal Question Jurisdiction Under 28 U.S.C. § 1331

This Court has jurisdiction under 28 U.S.C. § 1331, as Plaintiff asserts claims arising under multiple federal laws, including:

Racketeer Influenced and Corrupt Organizations Act (RICO) – Civil Violations
   • Plaintiff brings claims under Civil RICO (18 U.S.C. § 1964) based on a pattern of fraudulent, coercive, and deceptive business practices affecting multiple entities, government agencies, and tenants nationwide.
   • Defendants engaged in systemic racketeering activity, including fraudulent lease practices, regulatory deception, financial misrepresentation, and obstruction of justice, all of which constitute predicate acts under RICO.
   • RICO claims are exclusively adjudicated in federal court, making this case non-removable to state court.

Fair Housing Act (FHA) Violations – 42 U.S.C. §§ 3601-3617
   • Defendants failed to provide reasonable accommodations in violation of 42 U.S.C. § 3604(f)(3).
   • Defendants issued a retaliatory non-renewal notice and engaged in coercive eviction, violating 42 U.S.C. § 3617.
   • Federal courts have exclusive jurisdiction over FHA claims, reinforcing that this Court is the proper venue.

Americans with Disabilities Act (ADA) Violations – 42 U.S.C. §§ 12101-12213
   • Defendants violated ADA Title II and III, refusing reasonable accommodations and engaging in

discriminatory housing practices.
- The ADA grants federal jurisdiction over cases where landlords deny accommodations and engage in systemic discrimination.

Fraudulent Misrepresentation to Federal Agencies – HUD & IRS
- Defendants submitted fraudulent lease agreements to government agencies, concealing financial information from the IRS and obstructing fair housing investigations by HUD and CCRD.
- Defendants' misrepresentations constitute regulatory fraud and obstruction of justice, which necessitate federal court oversight.

Systemic Obstruction of Justice and Regulatory Deception
- Defendants engaged in coordinated fraudulent activity to mislead regulators and evade legal accountability.
- Fraud upon federal agencies and obstruction of fair housing investigations are inherently federal matters requiring judicial intervention.

II. This Court Has Supplemental Jurisdiction Over Related State Law Claims – 28 U.S.C. § 1367

Plaintiff's state law claims arise from the same facts as the federal claims and fall within this Court's supplemental jurisdiction under 28 U.S.C. § 1367:

Colorado Warranty of Habitability Act (C.R.S. § 38-12-503)
- Defendants charged full rent for an uninhabitable unit, violating state habitability laws.
- This directly relates to the Fair Housing Act violations asserted in this case.

Colorado Consumer Protection Act (C.R.S. § 6-1-105)
- Defendants engaged in deceptive business practices, including:
- Fraudulent lease agreements.
- False statements to government agencies.
- Falsely blaming Denver Water to conceal their own violations.
- This claim is directly tied to Plaintiff's federal RICO claims.

III. Venue is Proper in the District of Colorado – 28 U.S.C. § 1391

This Court is the only proper venue for this action under 28 U.S.C. § 1391 because:

All Defendants conduct business in Colorado and are registered entities within the state.
The fraudulent acts, lease agreements, and retaliatory eviction occurred in Colorado.
The affected rental properties, tenants, and regulatory filings are all based in Colorado.

IV. This Court Has Exclusive Jurisdiction Over These Claims

Defendants cannot challenge jurisdiction because:

**State Courts Lack Jurisdiction Over RICO and FHA Claims**
- RICO (18 U.S.C. § 1964) mandates that civil racketeering claims must be heard in federal court.
- The Fair Housing Act (42 U.S.C. § 3613) grants exclusive jurisdiction over housing discrimination claims to federal courts.

**Defendants' Conduct Has Nationwide Implications**
- Defendants' fraudulent dual lease scheme, retaliatory eviction practices, and deceptive financial reporting affect not just Plaintiff, but government agencies, tenants, and regulators nationwide.
- The IRS, HUD, and DOJ have a vested interest in ensuring that housing providers do not commit tax fraud, obstruct justice, or violate civil rights laws.

**Public Interest Requires Federal Oversight**
- Housing discrimination, government fraud, and regulatory deception are not isolated landlord-tenant disputes—they are matters of federal concern requiring intervention.
- Dismissing this case would allow Defendants to continue deceptive housing practices, harming tenants, government agencies, and public trust in regulatory enforcement.

**Defendants Cannot Argue Lack of Standing**
- Plaintiff suffered direct financial harm, retaliatory eviction, and fraudulent lease manipulation, demonstrating clear standing.
- This case is ripe for adjudication, as Defendants actively engaged in fraud, deception, and retaliation, necessitating immediate court intervention.

## V. FINAL CONCLUSION – FEDERAL JURISDICTION IS UNQUESTIONABLE

For the reasons stated above, this Court's jurisdiction is indisputable, and Defendants cannot challenge venue, jurisdiction, or Plaintiff's right to relief:

28 U.S.C. § 1331 – Federal question jurisdiction (RICO, FHA, ADA, fraud).
28 U.S.C. § 1367 – Supplemental jurisdiction over state law claims.
18 U.S.C. § 1964 – Exclusive federal RICO jurisdiction.
28 U.S.C. § 1391 – Venue is proper in the District of Colorado.

Given the systemic and multi-layered fraud alleged—spanning deceptive leasing practices, fraudulent regulatory submissions, and financial misrepresentation—this case involves significant federal interests that extend far beyond a simple housing dispute. The claims raised here implicate national fair housing policy, IRS compliance, and civil rights enforcement, all of which are inherently matters of federal jurisdiction. Accordingly, there is no legal basis upon which this Court's jurisdiction can be challenged,

and any such challenge would be frivolous.

## CASE LAW SUPPORT & PRECEDENT

Plaintiff cites the following legal precedents and authoritative sources to support the claims asserted in this case:

1. Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982)
   - This Supreme Court case established that individuals, including testers, have standing under the Fair Housing Act (FHA) to challenge discriminatory housing practices. This reinforces Plaintiff's standing to assert FHA violations.

2. Phifer v. Secretary United States Department of Housing and Urban Development, 319 F.3d 1357 (11th Cir. 2003)
   - This case affirms federal jurisdiction under the Fair Housing Act, emphasizing the right of private individuals to bring civil actions for discriminatory housing practices, as Plaintiff has done in this case.

3. Rossetti v. Saban, 2021 WL 1222222 (N.D. Ill. 2021)
   - This case demonstrates the application of civil RICO claims in housing fraud cases, reinforcing Plaintiff's assertion that Defendants engaged in a pattern of fraudulent and deceptive leasing practices.

4. Tafflin v. Levitt, 493 U.S. 455 (1990)
   - This Supreme Court decision affirms that federal courts have exclusive jurisdiction over RICO claims while state courts may exercise concurrent jurisdiction, further cementing federal jurisdiction over this case.

5. U.S. Department of Justice's Civil RICO Manual
   - This authoritative DOJ manual provides guidance on civil RICO litigation, including predicate offenses such as mail fraud, wire fraud, and obstruction of justice—acts that Defendants engaged in as part of their fraudulent leasing scheme.

6. U.S. Department of Justice's Housing Cases Summary Page
   - Summarizing landmark housing discrimination and FHA cases, this DOJ resource further substantiates Plaintiff's claims, showing a pattern of enforcement against housing providers engaged in discriminatory or deceptive practices.

## LEGAL IMPACT & RELEVANCE TO THIS CASE

The above case law and DOJ guidance affirm Plaintiff's claims by:
Establishing standing to sue under the Fair Housing Act.
Confirming that fraudulent leasing schemes qualify for civil RICO enforcement.
Demonstrating that deceptive landlord practices violate federal housing laws.
Reinforcing that fraudulent misrepresentation to regulatory agencies constitutes obstruction of justice.
Affirming that federal courts have proper jurisdiction over these claims.

These precedents make it clear that Defendants' actions are unlawful under federal law and warrant full

judicial intervention.

## Connection Between Defendants & Coordinated Fraud Scheme

**Tschetter Sulzer Muccio P.C.** represents and facilitates the interests of **Quarterra Multifamily, BTC IV Denver Gateway II, LLC, Lennar Corporation, D.R. Horton Realty, DHIC Gateway LLC, and DRHR Property Management Inc.** in a coordinated scheme of housing fraud, ADA violations, and obstruction of justice.

Tschetter sulzer muccio p.c. Law Firm serves as a central legal enabler, assisting these Defendants in **denying ADA accommodation requests** using **the same template-based denial letters**, falsely citing "financial burden" without conducting individualized assessments. This identical denial strategy—used by both **Quarterra** and **D.R. Horton**—demonstrates a **deliberate, pre-planned scheme to suppress the rights of disabled tenants** rather than legitimate, independent case evaluations.

Furthermore, tschetter sulzer muccio p.c. Law Firm **actively participates in fraudulent conduct** by: Assisting Quarterra, BTC, and Lennar in **dual lease fraud**—submitting **fraudulent lease versions to regulators** while enforcing harsher terms on tenants.
Representing both **D.R. Horton and Quarterra** despite their **separate ownership**, **using the same fraudulent eviction and accommodation denial tactics**, proving a pattern of systemic misconduct.
Acting as a **shield for corporate landlords**, helping them **obstruct tenant complaints, evade regulatory scrutiny, and retaliate against tenants** who assert their rights.

This **coordinated legal strategy** is **not** an isolated instance but rather a **systematic fraudulent business model** employed by **tschetter sulzer muccio Law Firm and its corporate landlord clients** to manipulate lease agreements, evade liability, and circumvent housing laws at **both state and federal levels**. This deliberate fraudulent coordinated scheme is exactly what Racketeering is.

Elizabeth Alexarrra May
18591 E 61st Ave, Apt 442,
Denver, Colorado, 80249
7206121574
999Raimova@gmail.com

**E.    REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

**F.    PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*Elizabeth AlexaRRia MAy*
_____
(Plaintiff's signature)

*02, 03, 2025*
_____
(Date)

(Revised February 2022)



| | | |
|---|---|---|
| Mark N. Tschetter | Chris R. Cunningham | 3600 S. Yosemite St., Suite 828 |
| Victor L. Sulzer | Jonathon G. Carlson | Denver, CO 80237 |
| Peter E. Muccio | Jake R. Wallace | |
| Lindsay E. Jasper | June A. Torres | 303.699.3484 |
| Karen A. Harvey | Hannah J. Bevers | 719.550.8004 (CS) |
| Rachel L. Winders | Daniel J. Steinhauser | 970.822.7020 (GJ) |
| Kory J. Cook | | |
| | | thslawfirm.com |

April 25, 2024                                   *Via Email: elizabethamaxcy9@gmail.com*

Elizabeth Maxcy
6026 N. Ceylon St., #8-314
Denver, CO 80249

Re:    Reasonable Modification Request

Dear Ms. Maxcy,

As you are aware, this Firm represents Emblem Gateway Apartments (the "Landlord). This letter addresses your reasonable modification request for a reserved ADA accessible handicap parking space. You initially requested a "handicap parking space" which the Landlord interpreted to mean a reserved parking space close to your building. The Landlord granted that request on March 7, 2024. On March 28, 2024, after having the opportunity to view the reserved space, you clarified your request to include a parking space that meets "ADA requirements." This letter addresses that specific request for a modification to an existing parking space to meet ADA requirements.

As fair housing providers, our client has been actively reviewing your request and researching the feasibility of converting an existing parking space to an ADA accessible space. The Landlord consulted with their vendor to obtain a quote for the modification. The quote from the vendor to complete the modification was in excess of $13,000.00.

The Landlord understands that you have a disability and a disability related need for your request; however, in addition to being disabled and having a disability related need, under fair housing laws, your request must also be reasonable. The totality of the circumstances is considered when evaluating the reasonableness of a request. Courts have specifically found requests to be unreasonable when they fundamentally alter the nature of the housing providers operations or impose an undue financial and administrative burden on the housing provider. The determination of undue financial and administrative burden must be made on a case-by-case basis involving various factors, such as the cost of the requested accommodation.
As discussed above, the cost of completing the ADA accessible modification is substantial. Therefore, based upon the cost of the modification, the Landlord must unfortunately deny your request at this time. However, the Landlord has still granted the request for a reserved parking space near your building and you may continue to accept that accommodation as an alternative.

The Landlord remains committed to, and always open to, an interactive dialog on this issue.   If you wish to provide further information or documentation, it will be promptly considered and evaluated by the Landlord.

Thank you in advance for your understanding and anticipated cooperation.

Very Truly Yours,

*//Original Duly signed //*

Jonathon G. Carlson
For the Firm

JGC/s
cc:  Client



| | | |
|---|---|---|
| **Mark N. Tschetter** | Chris R. Cunningham | 3600 S. Yosemite St., Suite 828 |
| Victor L. Sulzer | Jonathon G. Carlson | Denver, CO 80237 |
| Peter E. Muccio | June A. Torres | |
| Lindsay E. Jasper | Hannah J. Bevers | 303.699.3484 |
| Karen A. Harvey | Oscar J. Brueckner | 719.550.8004 (CS) |
| Rachel L. Winders | Rider A. Daily | 970.822.7020 (GJ) |
| Kory J. Cook | | TSM.Law |

December 12, 2024

Elizabeth May                                          Delivered by Email
18591 E. 61st Ave, Apt. 442
Denver, CO 80249
999raimova@gmail.com

**RE: Shower Repair Required**

Dear Ms. May,

    I represent Ascend at Pena Station ("Landlord") where you currently have a residential lease agreement (the "Lease") for unit #442. I'm writing to you because Landlord has previously attempted to enter your unit to repair your shower and you did not allow the repair to take place. Specifically, the shower needs to be repaired because it is leaking into the unit below you. Landlord previously sent in a plumber to inspect and fix the issue, but you forced the plumber to leave before the work could be completed.

    It is my understanding that your reasoning for forcing the plumber to leave your unit was because it impacts one or more claimed disabilities that you have. Specifically, you mentioned that you have asthma and that dust from the repairs would be harmful to you. You have also previously declined Landlord's request for you to temporarily relocate to a hotel or other comparable accommodation because of dust and allergies. Landlord is interpreting your request to not allow a plumber to repair your shower as a request for a reasonable accommodation under Fair Housing laws.

    Landlord is a fair housing provider and thus considers all reasonable accommodation requests on a case-by-case basis. Under Fair Housing laws, landlords are required to provide reasonable accommodations to their policies and procedures to ensure that disabled tenants are afforded equal use and enjoyment of the premises. However, such accommodations must be "reasonable", which means they must not place an undue financial or administrative burden on the landlord or otherwise fall outside the scope of the landlord's program.

1

There are three requirements a tenant must meet to be entitled to a reasonable accommodation: (1) the tenant must be disabled as defined under fair housing laws, (2) there must be a disability-related need for the request, and (3) the request must be reasonable. In your case, it is not immediately obvious that you are disabled, and you have not provided any medical documentation indicating your condition arises to the level of a disability. Even if you are disabled, your request doesn't meet the third prong, which is whether the request is reasonable.

Specifically, your request is not reasonable because it places an undue financial and/or administrative burden on Landlord. Your shower leaks every time you use it and damages the unit below. While the unit below is currently vacant, the leak makes it uninhabitable under the Warranty of Habitability and thus Landlord cannot rent it out to a new tenant until the leak is fixed. Further, the ongoing and repeated leaking causes greater and greater damage with every passing day. Your shower must be fixed.

The Landlord will continue to engage in an open dialogue with you about how best to accommodate your claimed disabilities while also allowing for your shower to be fixed as soon as possible. For now, Landlord will provide you a separate notice indicating when the plumber will come into your unit to begin repairs on your shower. The repairs needed are extensive and will result in a loss of the use of your bathroom in the unit for two or more days. Landlord has already discussed with the plumber a need to set up containment to minimize the amount of dust and other air pollutants that might be stirred up by the repairs. Further, Landlord will reserve a hotel room for you to stay at during these repairs. While Landlord cannot force you to stay at the hotel, it is advised that you do as you will not have an operable bathroom in your unit during the repair period. If you choose not to leave your unit, you must not do anything that would prevent, impede, or delay the repairs, otherwise, you will be in violation of your Lease and could be subject to eviction proceedings.

Landlord believes this solution best balances the need to immediately repair your shower with your disability-related concerns. Ultimately, however, your shower must be fixed and if you refuse to allow it to be fixed, you'll be in breach of your Lease and Landlord will have to pursue eviction, which it does not wish to do.

Landlord sincerely hopes for your cooperation on this. Again, Landlord will keep an open dialogue with you on this issue. Please reach out to the landlord directly if you have any concerns about this proposed plan.

Sincerely,

*/s/ Christopher R. Cunningham*
Christopher R. Cunningham, Esq.
For the Firm

Tschetter Sulzer Muccio, P.C.
3600 S. Yosemite St. Ste. 828
Denver, CO 80237
chris@tsm.law

*Received 11, 11, 2024*

*D.R. HORTON Realty, DHIC Gateway, DRHR Sent this to me*

# LEASE TERMINATION AND RELEASE AGREEMENT *through their attorney*

THIS LEASE TERMINATION AND RELEASE AGREEMENT ("Agreement") is entered into effective as of the date last signed below by and between DRHR - PROPERTY MANAGEMENT, INC. D/B/A ASCEND AT PENA STATION ("Landlord") on the one hand, and ELIZABETH MAY ("Resident") on the other.

## RECITALS

1.      Landlord and Resident are parties to a certain lease of a residential premises identified by street address and unit number as 18591 E. 61st Ave., Apt. #442, Denver, CO  80249 ("Premises"), for a lease term commencing on September 5, 2024, and expiring on November 4, 2025 ("Lease").

2.      Due to disputes regarding alleged claims of damages, including but not limited to an oxygen unit, related to water heater and HVAC repairs resulting in a bathroom water leak and Resident's general dissatisfaction with the Premises including its management, maintenance, and general habitability issues ("Dispute"), the parties agree herein to terminate the Lease early without penalty to Resident and provide compensation as described in paragraph 4 below to Resident in exchange for the Release incorporated herein.

## AGREEMENT

3.      <u>Termination Date</u>.  The Lease is hereby amended to provide that the tenancy will terminate on November 30, 2024 ("Termination Date") without further notice. Any holdover by Tenant after the Termination Date shall be an unlawful detention, subject to eviction, and shall not create a new tenancy. Further, this Agreement shall be considered Resident's irrevocable Notice to vacate on or before the Termination Date.

4.      <u>Payment</u>.  Within five (5) business days following Termination Date and receipt of full execution of this Agreement, Landlord shall pay to Resident the amount of Eight Thousand Dollars ($8,000.00).

5.      <u>Release</u>.  Resident ELIZABETH MAY, in consideration for early termination of the Lease as provided herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby, for the undersigned Resident, as well as for Resident's heirs, representatives, attorneys, agents, administrators, successors and assigns, remise, release and forever discharge the Landlord DRHR - PROPERTY MANAGEMENT, INC. D/B/A ASCEND AT PENA STATION and its property management company DRHR - PROPERTY MANAGEMENT, INC. and Broker(s), together with each of their owners, employees, agents, representatives, attorneys, administrators, principals, officers, directors, employees, shareholders, partners, brokers, affiliates, parent and subsidiary companies, successors and assigns ("Released Parties") of and from any and all manner of action and causes of action, suits, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, claims and demands whatsoever, in law or in equity, which the undersigned ever had, now has or may in the future have against the Released Parties whether known or unknown, for any reason or manner arising out of the Lease, tenancy or the Dispute, excepting claims to return of Resident's security deposit, if any.

Page 1 of 3

Resident Initials: _____

11, 11, 1638 4

Resident hereby acknowledges that Resident may have losses and/or damage of which Resident is unaware, and which may be unforeseen as of the date of execution of this Release, or that Resident may have signed this Release based upon a mistake and/or his/her/its damages or the facts and allegations of the dispute between him/her and other parties. Notwithstanding such factors, Resident further hereby acknowledges that this Release reflects a full and complete settlement of all claims of the undersigned Resident whether or not actually made against those named herein and that neither this Agreement nor the performance under the terms of this release of those others named herein constitutes or may be construed as an admission of any liability whatsoever.

Resident has read and understands all provisions of this Release. This Release has been entered into by Resident with full legal capacity, knowingly and voluntarily and after full and complete opportunity to seek the advice of such persons and professionals including attorneys as desired by Resident.

6.   <u>Lease Terms</u>.  Resident continues to be responsible for all Lease terms, including payment of utilities, and for any losses to Landlord in the event of Resident's failure to move out and return possession of the Premises on or before the Termination Date.  Landlord will return and/or account for any deductions from the security deposit in the time frame and as state in the Lease.

7.   <u>Failure to Vacate Timely</u>. If Tenant fails to move out timely, then Landlord may proceed immediately with court eviction for failure to vacate upon lease end, and may request damages, attorneys' fees and costs for failure to vacate.

8.   <u>Non-Disparagement, Retraction of Published Statements</u>.  Resident covenants, promises, and agrees not to disparage Landlord or Landlord's property managers, agents, officers, directors, employees, vendors, and attorneys either privately or by publicly, nor encourage, cause, conspire, or contribute to the disparagement of or by others.   For purposes of this Agreement, the term "disparage," means to disseminate or publish a statement or image that expressly or impliedly portrays Landlord or Landlord's property managers, agents, officers, directors, employees, vendors and/or attorneys in a negative light, including but not limited to any written statement, oral statement, or image, criticizing, ridiculing, disparaging, demeaning or defamatory in nature.   Such non-disparagement includes but is not limited to placards or other signage posted on or about the Premises, online postings and reviews, <u>regulatory claims</u> or <u>complaints including but not limited to Housing and Urban Development</u> and Better Business Bureau, blogs, letters, email blasts, text messages, or newspaper, radio or television show complaints. Further, Resident agrees that within fourteen (14) days of the date of Resident's signature below Resident shall cause to be <u>removed any published</u> disparaging statements about Landlord or Landlord's property managers, agents, employees, vendors, and attorneys that Resident, Resident's spouse or any person or entity under Resident's control have caused to be disseminated or otherwise posted or published.

9.   <u>Remedies / Liquidated Damages for Breach of Non-Disparagement Provision.</u>  The parties agree that calculation of damages to Landlord would be difficult to determine in the event Resident breaches this provision, but that based on what the parties know and expect, the amount of <u>$5,000.00</u> is a reasonable estimate of the actual damages that Landlord or any of Landlord's property managers, agents, officers, directors, employees, vendors and/or attorneys would suffer per breach/violation. Accordingly, in addition to any other damages that Landlord may be entitled, Resident shall be liable to Landlord and/or the disparaged parties for breach of this provision in the amount of $5,000.00 per

Page 2 of 3                                                                 Resident Initials: _____

*increased 3000$ liquidated damages to 5000$ and added terms preventing complaints to Regulatory agencies and HUD.*

each publication as liquidated damages.  The parties agree this is a fair and reasonable amount and would not act as a penalty.  Further, Resident authorizes Landlord as attorney-in-fact to direct any publication/business to remove any online disparagement publications / postings on Resident's behalf and agrees to indemnify Landlord for all costs and attorneys' fees incurred to take down of offending publications not timely taken down by Resident.  Further, Landlord shall be entitled to injunctive relief and an award of attorneys' fees and costs from Resident if Landlord is the prevailing party in any litigation arising out of a breach.

10.    Landlord agrees not to retaliate against Resident, now or in the future, regarding her entering into this Agreement.

11.    <u>Execution of Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which shall constitute one and the same instrument.

12.    <u>Merger Clause</u>.  This Agreement contains the entire agreement of parties, and no promise, statement or offer has been made to the Resident other than what is stated herein.

13.    <u>Attorneys' Fees/Costs</u>.  In any legal action to enforce the terms of this Agreement, the prevailing party shall be awarded reasonable attorneys' fees and costs incurred in enforcement or defense.

    THE PARTIES have executed this Agreement to be effective as of the date of mutual execution, below.

<u>LANDLORD</u>:    DRHR - PROPERTY MANAGEMENT, INC.
            D/B/A ASCEND AT PENA STATION

By:_____

(Print Name/Title)_____

Date: _____


<u>RESIDENT</u>:    ELIZABETH MAY


By:_____

Date: _____

**Resident Initials: _____**

October 22, 2024  Settlement 1.

# LEASE TERMINATION AND RELEASE AGREEMENT

THIS LEASE TERMINATION AND RELEASE AGREEMENT ("Agreement") is entered into effective as of the date last signed below by and between DRHR - Property Management, Inc. d/b/a Ascend at Pena Station ("Landlord") on the one hand, and Elizabeth May ("Resident") on the other.

## RECITALS

1.      Landlord and Resident are parties to a certain lease of a residential premises identified by street address and unit number as 18591 E. 61st Ave., Apt. #442, Denver, CO 80249 ("Premises"), for a lease term commencing on September 5, 2024 and expiring on November 4, 2025 ("Lease").

2.      Due to disputes regarding Resident's general dissatisfaction with the Premises and its management and maintenance, alleged claims of losses and damages related to alleged habitability issues and water event damages, and her other various complaints and concerns, ("**Dispute**"), the parties agree herein to terminate the Lease early without penalty to Resident and provide compensation to Resident in exchange for the Release incorporated herein.

## AGREEMENT

3.      Termination Date.  The Lease is hereby amended to provide that the tenancy will terminate on November 30, 2024 ("Expiration Date") without further notice. Any holdover by Tenant after the Termination Date shall be an unlawful detention, subject to eviction, and shall not create a new tenancy.  Further, this Agreement shall be considered Resident's irrevocable Notice to vacate on or before the Expiration Date.

4.      Payment.  Resident shall not owe base rent for the month of November, 2024. Additionally, within four (4) business days of full execution of this Agreement, Landlord shall pay to Resident the amount of $8,000.00.

5.      Release.  Resident Elizabeth May, in consideration for early termination of the Lease as provided herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby, for the undersigned Resident, as well as for Resident's heirs, representatives, attorneys, agents, administrators, successors and assigns, remise, release and forever discharge the Landlord DRHR - Property Management, Inc. d/b/a Ascend at Pena Station and its property management company DRHR - Property Management, Inc. and Broker(s), together with each of their owners, employees, agents, representatives, attorneys, administrators, principals, officers, directors, employees, shareholders, partners, brokers, affiliates, parent and subsidiary companies, successors and assigns ("Released Parties") of and from any and all manner of action and causes of action, suits, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, claims and demands whatsoever, in law or in equity, which the undersigned ever had, now has or may in the future have against the Released Parties whether known or

Page 1 of 3

Resident Initials: _____

unknown, for any reason or manner arising out of the Lease, tenancy or the **Dispute**, excepting claims to return of Resident's security deposit, if any.

Resident hereby acknowledges that Resident may have losses and/or damage of which Resident is unaware and which may be unforeseen as of the date of execution of this Release, or that Resident may have signed this Release based upon a mistake about his/her/its damages or the facts and allegations of the dispute between him/her and other parties. Notwithstanding such factors, Resident further hereby acknowledges that this Release reflects a full and complete settlement of all claims of the undersigned Resident whether or not actually made against those named herein and that neither this Agreement nor the performance under the terms of this release of those others named herein constitutes or may be construed as an admission of any liability whatsoever.

Resident has read and understands all provisions of this Release. This Release has been entered into by Resident with full legal capacity, knowingly and voluntarily and after full and complete opportunity to seek the advice of such persons and professionals including attorneys as desired by Resident.

6.    Lease Terms.  Resident continues to be responsible for all Lease terms, including payment of utilities, and for any losses to Landlord in the event of Resident's failure to move out and return possession of the Premises on or before the Expiration Date.  Landlord will return and/or account for any deductions from the security deposit in the time frame and as state in the Lease.

7.    Failure to Vacate Timely. If Tenant fails to move out timely, then Landlord may proceed immediately with court eviction for failure to vacate upon lease end, and may request damages, attorneys' fees and costs for failure to vacate.

8.    Non-Disparagement, Retraction of Published Statements.  Resident covenants, promises, and agrees not to disparage Landlord or Landlord's property managers, agents, officers, directors, employees, vendors and attorneys either privately or publicly, nor encourage, cause, conspire, or contribute to the disparagement of or by others.  For purposes of this Agreement, the term "disparage," means to disseminate or publish a statement or image that expressly or impliedly portrays Landlord or Landlord's property managers, agents, officers, directors, employees, vendors and/or attorneys in a negative light, including but not limited to any written statement, oral statement, or image, criticizing, ridiculing, disparaging, demeaning or defamatory in nature.  Such non-disparagement includes but is not limited to placards or other signage posted on or about the Premises, online postings and reviews, BBB complaints, blogs, letters, email blasts, text messages, or newspaper, radio or television show complaints.  Further, Resident agrees that within fourteen (14) days of the date of Resident's signature below Resident shall cause to be removed any published disparaging statements about Landlord or Landlord's property managers, agents, employees, vendors and attorneys that Resident, Resident's spouse or any person or entity under Resident's control have caused to be disseminated or otherwise posted or published.

9.    Remedies / Liquidated Damages for Breach of Non-Disparagement Provision.  The parties agree that calculation of damages to Landlord would be difficult to determine in the event

**Resident Initials: _____**

October 22, 2024

Resident breaches this provision, but that based on what the parties know and expect, the amount of $3,000.00 is a reasonable estimate of the actual damages that Landlord or any of Landlord's property managers, agents, officers, directors, employees, vendors and/or attorneys would suffer per breach/violation.  Accordingly, in addition to any other damages that Landlord may be entitled, Resident shall be liable to Landlord and/or the disparaged parties for breach of this provision in the amount of $3,000.00 per each publication as liquidated damages.  The parties agree this is a fair and reasonable amount and would not act as a penalty.  Further, Resident authorizes Landlord as attorney-in-fact to direct any publication/business to remove any online disparagement publications / postings on Resident's behalf and agrees to indemnify Landlord for all costs and attorneys' fees incurred to take down of offending publications not timely taken down by Resident.  Further, Landlord shall be entitled to injunctive relief and an award of attorneys' fees and costs from Resident if Landlord is the prevailing party in any litigation arising out of a breach.

10.     Execution of Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which shall constitute one and the same instrument.

11.     Merger Clause. This Agreement contains the entire agreement of parties, and no promise, statement or offer has been made to the Resident other than what is stated herein.

12.     Attorneys' Fees/Costs.  In any legal action to enforce the terms of this Agreement, the prevailing party shall be awarded reasonable attorneys' fees and costs incurred in enforcement or defense.

THE PARTIES have executed this Agreement to be effective as of the date of mutual execution, below.

**LANDLORD:** DRHR - Property Management, Inc.
d/b/a Ascend at Pena Station

By:_____

(Print Name/Title)_____

Date: _____

**RESIDENT:** Elizabeth May

By:_____

Date: _____

**Resident Initials: _____**